UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JOSEPH BERGER, JR.,                 Case No. 12-11779

          Plaintiff,                 Stephen J. Murphy, III
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Michael Hluchaniuk
                                            United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On April 20, 2012, plaintiff Michael Joseph Berger, Jr. filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Stephen J. Murphy, III referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 3). This matter is before the Court on cross-motions for summary judgment. (Dkt. 9, 11).

## B.  Administrative Proceedings

Plaintiff filed the instant claims on December 1, 2008, alleging that he became disabled on May 30, 2008.  (Dkt. 7-2, Pg ID 32; Dkt. 7-5, Pg ID 115-16).[1] The claim was initially disapproved by the Commissioner on February 3, 2009. (Dkt. 7-3, Pg ID 64).  Plaintiff requested a hearing and on August 5, 2010, plaintiff appeared with an attorney before Administrative Law Judge ("ALJ") John A. Ransom, who considered the case de novo.  In a decision dated September 20, 2010, the ALJ found that plaintiff was not disabled.  (Dkt. 7-2, Pg ID 29-40). Plaintiff requested a review of this decision on November 1, 2010.  (Dkt. 7-2, Pg ID 28).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[2] the Appeals Council, on February 22, 2012, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 21-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] The undersigned notes that the parties and the ALJ stated that plaintiff applied for disability insurance benefits and supplemental security income (SSI) benefits.  However, the transcript only contains an application for disability insurance benefits, which indicated that plaintiff did not want to file for SSI benefits.  (Dkt. 7-5, Pg ID 115-16), and the Disability Determination and Transmittal form only addressed DIB benefits.  (Dkt. 7-3, Pg ID 64).

[2] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1976 and was 32 years of age on the alleged disability onset date and 34 years old at the time of the administrative hearing.  (Dkt. 7-2, Pg ID 47).  Plaintiff's past relevant work included work as a machinist, a skilled position performed at the medium level of exertion.  (Dkt. 7-2, Pg ID 39).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 7-2, Pg ID 34).  At step two, the ALJ found that plaintiff's spondylolisthesis-residual s/p laminectomy and fusion with instrumentation at L4/5 and L5/S1 levels, lumbar degenerative disc disease, and chronic left shoulder pain-s/p surgical intervention for fracture and torn rotator cuff, were "severe" within the meaning of the second sequential step, but that plaintiff's depression and anxiety were not "severe" impairments.  (Dkt. 7-2, Pg ID 34-35).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one

3

of the listings in the regulations.  (Dkt. 7-2, Pg ID 35).

The ALJ concluded that plaintiff had the following residual functional capacity:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except an "at will" sit/stand option; no repetitive bending, twisting and turning; no repetitive pushing or pulling, torquing or reaching with the left upper extremity and no use of air or vibrating tools.

(Dkt. 7-2, Pg ID 35-38).  At step four, the ALJ found that plaintiff could not perform his past relevant work, classified as skilled in nature and medium in strength demands.  (Dkt. 7-2, Pg ID 38-39).  At step five, the ALJ denied plaintiff benefits because he could perform a significant number of jobs available in the national economy.  (Dkt. 7-2, Pg ID 39-40).

**B.    Plaintiff's Claims of Error**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because he did not properly consider the opinions of plaintiff's treating physicians and improperly assessed plaintiff's credibility in making that RFC determination.  Plaintiff asserts that he treated with neurosurgeon Dr. Mark Adams, M.D., for several years, and that Dr. Adams consistently maintained that plaintiff was disabled and also completed an RFC form indicating that plaintiff was disabled.  Plaintiff was originally referred to Dr. Adams in March 2008 (Dkt. 7-7, Pg ID 238-29), and on May 20, 2008, Dr. Adams noted plaintiff's complaints of

4

"miserable back pain and pain that radiates down his legs with associated weakness, numbness and paresthesias." (Dkt. 7-7, Pg ID 232). Dr. Adams noted that conservative management and injection therapy caused no lasting improvement and examination revealed a decreased range of motion, muscle spasms and weakness and decreased sensation in both lower extremities. (*Id.*). An MRI showed a L4-5 disc collapse and central herniation as well as a grade 1 or 2 spondylolisthesis at L5 and S1. (*Id.*). Plaintiff subsequently underwent surgery on his back in July 2008, and Dr. Adams diagnosed plaintiff with lumbar spinal stenosis with grade 2 spondylolisthesis. (Dkt. 7-7, Pg ID 222).

Dr. Adams examined plaintiff in October 2008 and restricted him from returning to work until the end of November, and then with a maximum lifting of 10 pounds and a sit/stand option. (Dkt. 7-8, Pg ID 255). Dr. Adams continued to treat plaintiff, and during a March 2010 consultation, opined that plaintiff had reached maximum medical improvement. (Dkt. 7-8, Pg ID 449). Dr. Adams stated that plaintiff "continues to have severe pain in his back and significant limitations related to his spondylolisthesis," and that "he is disabled from his back standpoint because he is not able to lift, twist, turn or sit for any significant period of time." (*Id.*). Finally, in May 2010, Dr. Adams again examined plaintiff and opined that "he continues to have significant pain in his back and it is worsened when he leans forward," and that "at this point he is in no shape to be able to work or have a job,"

5

and "I am not certain that he is ever going to be able to return to a lifting, twisting, turning, bending job as we have said before."  (Dkt. 7-8, Pg ID 452).  Dr. Adams also filled out a Medical Assessment of Ability to Do Work-Related Activities (Physical) form in which he opined that plaintiff could sit, stand and walk for only 30 minutes during the work day, lift and carry and push and pull up to 10 pounds, never bend, twist, reach above shoulder level, squat, kneel, climb ladders, crouch, crawl or stoop, and only occasionally climb stairs.  (Dkt. 7-8, Pg ID 453-55).

Plaintiff argues that the ALJ erred in not relying on the opinion of Dr. Adams in determining plaintiff's RFC, and that there is no medical evidence that conforms with the ALJ's RFC.  Plaintiff points out that the only other Physical Residual Functional Capacity Assessment completed in this case was by a person in January 2009 who was not a medical professional.  (Dkt. 7-7, Pg ID 261-68).  That person concluded that plaintiff could do light work, occasionally lift up to 20 pounds, sit, stand and/or walk about six hours in an eight-hour work day, occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes or scaffolds.  (*Id.*).

Plaintiff goes on to argue that the ALJ's error is compounded by his meaningless boilerplate statement regarding plaintiff's credibility.  And, according to plaintiff, the ALJ failed to follow the accurate testimony of the vocational expert, who testified that there were no jobs available to plaintiff if his testimony

6

of needing to rest or nap during the day were deemed credible.

Finally, plaintiff argues that some medical evidence regarding plaintiff's post-hearing pain treatment was submitted to the Appeals Council after the ALJ's decision in this case, and that this evidence should be considered. Plaintiff argues that this evidence could not have been obtained before the hearing and that it is probative of plaintiff's ongoing pain being disabling, and thus should be considered. Plaintiff concludes that, based on all of the above arguments, the finding of the Commissioner should be reversed or remanded because the ALJ's opinion is not supported by substantial evidence.

### C.     The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ's finding that plaintiff could perform a reduced range of sedentary work, and thus is not disabled, is supported by substantial evidence. According to the Commissioner, the ALJ acknowledged that plaintiff's impairments resulted in pain and weakness in his back and left upper extremity, and imposed a series of restrictions to accommodate those impairments and limitations. The limitation to sedentary work alone is a significant restriction and accommodation of plaintiff's impairments; and the ALJ further restricted plaintiff from engaging in work that requires repetitive bending, twisting and turning, from repetitive pushing or pulling, torquing, or reaching with the left upper extremity, and allowed a sit/stand option "at will." (Dkt. 7-2, Pg ID 35).

The ALJ explained that additional restrictions were not necessary because plaintiff's physical therapist observed in July 2009 that plaintiff could ambulate independently without an assistive device and was able to walk "community distances" with no gait deviations, and plaintiff has been evaluated with only mild to moderate radiculitis since his surgery.  (Dkt. 7-2, Pg ID 36,38, citing Dkt. 7-8, Pg ID 399, Dkt. 7-9, Pg ID 496).  Further, Dr. Adams noted in March 2009 that plaintiff ambulated independently and noted "good decompression" and improved stability in April 2009, and an MRI of plaintiff's back "looks really good."  (Dkt. 7-8, Pg ID 441; Dkt. 7-9, Pg ID 494).  Examinations by Dr. Adams in September and October 2009 noted that plaintiff had full strength bilaterally in the lower and upper extremities and that straight leg raising was negative.  (Dkt. 7-8, Pg ID 437, 439).  Dr. John DiBella, M.C. noted that plaintiff "did very well following surgery," and continued "good resolution of lower extremity pain," although he did note "some mild to moderate residual lumbrosacral discomfort."  (Dkt. 7-9, Pg ID 495).

The ALJ also cited medical record evidence supporting his finding that plaintiff's left shoulder injury was not disabling.  (Dkt. 7-2, Pg ID 36).  In addition, the Commissioner argues, the ALJ properly considered plaintiff's activities in determining that plaintiff remained able to perform a reduced range of sedentary work, finding that plaintiff testified to performing household chores such as

vacuuming, washing dishes, and mopping, preparing simple meals daily, and that he left the house to get his mail, shopped in stores, walked, and drove a car.  (Dkt. 7-2, Pg ID 38).

The Commissioner contends that the ALJ properly gave plaintiff's physicians' statements that plaintiff was disabled no special weight because the issue of disability is reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e)(1) and (3).  Further, these opinions were inconsistent with plaintiff's activities and the medical evidence.  (Dkt. 7-2, Pg ID 37).  The Commissioner also argues that Dr. Adams did not permanently disqualify plaintiff from all employment, but rather qualified his opinions, stating plaintiff was not able to work "at this point" and speculated that plaintiff may never return to "a lifting, twisting, bending job."  (Dkt. 7-8, Pg ID 452-53).  Dr. Adams did not address whether plaintiff's condition met the 12-month durational requirement under the regulations.  Moreover, the ALJ's RFC's limitation to sedentary work is consistent with Dr. Adams' opinion that plaintiff could lift and carry up to 10 pounds occasionally, and the ALJ properly rejected Dr. Adams' other limitations as inconsistent with the medical evidence; namely, no record support for limitations on plaintiff's right shoulder (when only his left shoulder was injured) and evidence such as negative straight leg raise testing and no significant limitations in ranges of motion.  (Dkt. 7-2, Pg ID 37).  Thus, the Commissioner argues, the ALJ analyzed

9

Dr. Adams' opinions consistently with the regulations.

The Commissioner also contends that the ALJ's credibility finding is supported by substantial evidence, and that the ALJ adequately explained why he did not find plaintiff wholly credible.  The ALJ noted that the same medical evidence that supported his RFC finding also supported discounting plaintiff's claims of total disability, which is consistent with the regulations.  (Dkt. 7-2, Pg ID 38).  In addition, plaintiff only received intermittent treatment for his low back pain, which the ALJ found incompatible with his allegations of disabling pain.  (*Id.*); SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . .").  And, plaintiff did not always follow through with prescribed treatment, such as injection therapy.  (*Id.*).  Finally, the ALJ took stock of plaintiff's daily activities, which he found supported the finding that plaintiff could still perform a range of work.  *See* 20 C.F.R. § 404.1529(c)(3)(I).  Thus, the Commissioner concludes, substantial evidence supports the ALJ's credibility finding.

The Commissioner also argues that the ALJ properly relied on the vocational expert's testimony to find that jobs exist in significant numbers in the national economy that plaintiff can perform.  According to the Commissioner, the hypothetical question the ALJ posed to the vocational expert was consistent with

10

the limitations that the ALJ included in his RFC finding, and thus the plaintiff's

attack on the hypothetical question fails for the same reasons plaintiff's attack on

the ALJ's RFC determination fails, as set forth above. The ALJ properly only

included those limitations he found credible and supported by the evidence, and he

properly relied on the vocational expert's answer.

Finally, the Commissioner argues that plaintiff is not entitled to a Sentence

Six remand to consider certain medical records tendered by plaintiff after the ALJ

issued his decision, because plaintiff does not identify those records or even

explain what they document. The Commissioner contends that it is well-settled

that in the Sixth Circuit, evidence that a claimant submits to the Appeals Council,

which then declines review, may not be considered by the district court. *See Cline*

*v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-49 (6th Cir. 1996). Thus, the Court

should not consider these post-decision records. Further, plaintiff has not

demonstrated that he is entitled to a remand pursuant to Sentence Six of 42 U.S.C.

§ 405(g) because he has not met his burden to prove that the additional evidence is

new and material, and that he had good cause for his failure to incorporate the

additional evidence into the record during the administrative hearing, citing *Oliver*

*v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The fact

that the evidence is "new," insofar as it documents treatment plaintiff received after

the ALJ issued his decision, is not enough as a document's age alone does not

11

equate to good cause.  *See Oliver*, 804 F.2d at 966. Further, plaintiff also has not

shown that the new documents are material, because although they concern

impairments that existed between the time of the alleged onset date and the

hearing, plaintiff has not shown that they document plaintiff's condition during

that time, and plaintiff has not shown a reasonable probability that the ALJ would

have reached a different decision had he been presented with the new evidence,

citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.

1988).  Thus, the Commissioner concludes, this new evidence should not be

considered, nor should this matter be remanded for the ALJ to consider the new

evidence.

### D.    Plaintiff's Reply to the Commissioner's Motion

Plaintiff responds that the Commissioner's motion fails to demonstrate that

the ALJ's decision was supported by substantial evidence.  Plaintiff argues that Dr.

Adams is his long-time treating physician and that his opinions about plaintiff's

pain and credibility are entitled to far more weight than any other physician whose

records and/or opinions are in this file.  Plaintiff further argues that the new

evidence demonstrates that plaintiff continued in the same pattern of treatment he

had before the hearing, and thus is deserves consideration by the Court.  Thus,

plaintiff concludes that he is entitled to a reversal of the ALJ's opinion with a

remand for payment of benefits or a remand for a new hearing before a new ALJ.

12

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

   If supported by substantial evidence, the Commissioner's findings of fact are

conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion."  *McClanahan v.*

14

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

15

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq*.). Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled. F. Bloch,
Federal Disability Law and Practice § 1.1 (1984). While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    **Analysis and Conclusions**

In this case, the single decisionmaker ("SDM") model was used pursuant to

18

20 C.F.R. §§ 404.1406(b)(2), 404.906(b)(2).[3]  (Dkt. 7-3, Pg ID 64; Dkt. 7-7, Pg ID

261-68).  This regulation provides streamlined procedures as an experiment, in

which State Agency disability examiners may decide cases without documenting

medical opinions from State Agency medical consultants.  The "single

decisionmaker model" was an experimental modification of the disability

determination process that happens to have been used in Michigan.  *See Leverette*

*v. Comm'r*, 2011 WL 4062380 (E.D. Mich. Aug. 17, 2011), *adopted by* 2011 WL

4062047 (E.D. Mich. Sept. 13, 2011).  This experiment eliminated the

reconsideration level of review and allowed claims to go straight from initial denial

to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (the

single decisionmaker) to render the initial denial of benefits without documenting

medical opinions from the state agency medical consultants.  *Id*., citing 20 C.F.R.

§§ 404.906(b)(2), 416.1406(b)(2).  The Programs Operations Manual System

(POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-

4734-BK [the PRFC assessment form] was completed by an SDM because

---

[3]  The Court raises this issue *sua sponte*, given the serious nature of the error and the
pattern of repetition of this same error since the implementation of the single decision-maker
model in Michigan. Notably, in Social Security cases, the failure to submit a particular legal
argument is "not a prerequisite to the Court's reaching a decision on the merits" or a finding, *sua
sponte*, that grounds exist for reversal. *Reed v. Comm'r of Soc. Sec.*, 2012 WL 6763912, at *5
(E.D. Mich. Nov. 27, 2012) (citing *Wright v. Comm'r of Soc. Sec.*, 2010 WL 5420990, at *1-3
(E.D. Mich. Dec. 27, 2010), *adopted by* 2013 WL 53855 (E.D. Mich. 2013); *see also Buhl v.
Comm'r of Soc. Sec.*, 2013 WL 878772, at *7 n. 5 (E.D. Mich. Feb. 13, 2013) (plaintiff's failure
to raise argument did not prevent the Court from identifying error based on its own review of the
record and ruling accordingly), *adopted by* 2013 WL 878918 (E.D. Mich. Mar. 8, 2013).

SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's physical impairments were evaluated by an SDM, Mathew Branch, who apparently concluded that plaintiff's impairments were not disabling. (Dkt. 7-3, Pg ID 64; Dkt. 7-7, Pg ID 261-68). Thus, no medical opinion was obtained at this level of review, in accordance with this model. While the ALJ gave "consideration" to the SDM's opinion, it was clear that he did not give this opinion significant weight. (Dkt. 7-2, Pg ID 35 ("The undersigned has also considered the opinions of the medical disability examiners according to Social Security Ruling 96-6p. These opinions were initial assessments of the claimant's residual functional capacity.")); *see Hensley v. Comm'r of Soc. Sec.*, 2011 WL 4406359, at *1 (E.D. Mich. Sept. 22, 2011) (remand warranted because ALJ erroneously credited an RFC assessment as having been completed by a physician, as opposed to the non-physician single decisionmaker who wrote it).

However even, if the ALJ had not relied on the SDM opinion, the lack of any medical opinion on the issue of equivalence is in itself an error requiring remand. As set forth in *Stratton v. Astrue*, — F. Supp.2d —; 2012 WL 1852084, *11-12 (D.N.H. May 11, 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency

20

> medical or psychological consultant or other program
> physician or psychologist as to whether an individual's
> impairment(s) is equivalent in severity to any impairment
> in the Listing of Impairments. However, *longstanding
> policy requires that the judgment of a physician* (or
> psychologist) designated by the Commissioner *on the
> issue of equivalence on the evidence* before the
> administrative law judge ... *must be received into the
> record as expert opinion evidence and given appropriate
> weight.*

1996 WL 374180, at *3 (emphasis added); *Barnett v. Barnhart*, 381 F.3d 664, 670

(7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical

judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20

C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir.

Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a

determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b));

*Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning

that an ALJ who makes a step-three equivalence determination without

expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explains that SSR 96-6p treats equivalence

determinations differently from determinations as to whether an impairment meets

a listing, requiring expert evidence for the former, but not the latter. *Id.* at *12;

citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. May 23, 2008)

("The basic principle behind SSR 96-6p is that while an ALJ is capable of

reviewing records to determine whether a claimant's ailments meet the Listings,

21

expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.") (citation and quotation marks omitted). This expert opinion requirement can be satisfied by a signature on the Disability Determination Transmittal Form. *Stratton*, at *12, citing SSR 96-6p, 1996 WL 374180, at *3 (The expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D .... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006). There is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments in this record. (Dkt. 7-3, Pg ID 64).

The great weight of authority[4] holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton*, at *13 (collecting cases); *see e.g. Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none

---

[4] In *Stratton*, the court noted that a decision from Maine "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Id.*, citing *Goupil v. Barnhart*, 2003 WL 22466164, at *2 n. 3 (D. Me. Oct. 31, 2003).

was in the record), *adopted by* 2010 WL 2103637 (W.D. Wash. May 25, 2010);

*Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) (holding

that where record included no expert-opinion evidence on equivalence, "[t]he ALJ

erred in not seeking the opinion of a medical advisor as to whether Mr.

Wadsworth's impairments equaled a listing").  While the government has argued in

other cases that courts in this district have concluded that the ALJ need not obtain

expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*,

2011 WL 3841632 (E.D. Mich. Mar. 29, 2011), *adopted by* 2011 WL 3841629

(E.D. Mich. Aug. 30, 2011), and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich.

Feb. 14, 2011), *adopted by* 2011 WL 845950 (E.D. Mich. Mar. 8, 2011), the

undersigned does not find these cases persuasive.  In both cases, the court

concluded that because the regulations permitted an SDM to make disability

determination without a medical consultant that the ALJ is, therefore, also

permitted to do so where the "single decisionmaker" model is in use.  Nothing

about the SDM model changes the ALJ's obligations in the equivalency analysis.

*See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's

impairment equals a listing is a medical judgment, and an ALJ must consider an

expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of*

*Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the

opinion of a medical expert is required before a determination of medical

equivalence is made.") (citing 20 C.F.R. § 416.926(b)).  Based on the foregoing,

the undersigned cannot conclude that the ALJ's obligation to consult a medical

expert in making an equivalency determination is any different in a case where the

SDM model is used.  While the SDM is not required to obtain a medical opinion in

cases involving physical impairment, as noted in *Timm* and *Gallagher*, nothing

appears to have modified the ALJ's obligations and it makes little sense to

conclude that the ALJ is relieved from obtaining an expert medical opinion in

SDM cases.  Thus, the undersigned's analysis does not alter the SDM model,

which leaves the SDM discretion as to whether a medical expert is consulted as to

physical impairments.  Rather, the undersigned's analysis leaves intact the

requirements imposed on an ALJ in making an equivalency determination, which

do not otherwise appear to be modified by the SDM model.  *See also*, *Maynard v.*

*Comm'r*, 2012 WL 5471150 (E.D. Mich. Nov. 9, 2012) ("[O]nce a hearing is

requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of

equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. Mar. 22,

2013) (a medical opinion on the issue of equivalence is required, regardless of

whether the SDM model is implicated).  And, if the consulting examiner offered no

opinion on equivalence, the ALJ is required to obtain an updated medical report

addressing equivalence.  *See e.g.*, *Caine*, 2010 WL 2102826 at *8 (where the state

agency consultant offered no findings on equivalence, the ALJ should obtain an

updated medical expert opinion in order to meet her obligation to fully and fairly develop the administrative record.)

While the undersigned is not necessarily convinced that plaintiff can show that his physical impairments satisfy the equivalence requirements, "[n]either the ALJ nor this court possesses the requisite medical expertise to determine if [plaintiff]'s impairments ... in combination equal one of the Commissioner's listings." *Freeman v. Astrue*, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012). For these reasons, the undersigned concludes that this matter must be remanded so that the ALJ can obtain the opinion of a qualified medical advisor on the issue of equivalence as to plaintiff's physical impairments. In the view of the undersigned, given that the opinions of a medical advisor must be obtained, plaintiff's credibility will necessarily have to be re-assessed in full after such an opinion is obtained.

A related problem in this case is the ALJ's RFC determination. The ALJ stated he "considered the opinions of the medical disability examiners" in arriving at his determination, but did not give the opinion any significant weight. (Dkt. 7-2, Pg ID 35). However, only the SDM completed a physical RFC assessment of plaintiff, in January 2009, and no consulting physician examined plaintiff or offered an opinion of plaintiff's RFC. The only "work function" assessment in the record was completed by plaintiff's treating physician, Dr. Adams in May 2010.

25

Dr. Adams examined plaintiff in October 2008 and restricted him from returning to work until the end of November, and then with a maximum lifting of 10 pounds and a sit/stand option.  (Dkt. 7-8, Pg ID 255).  Dr. Adams continued to treat plaintiff, and during a March 2010 consultation, opined that plaintiff had reached maximum medical improvement and stated that plaintiff "is disabled from his back standpoint because he is not able to lift, twist, turn or sit for any significant period of time."  (Dkt. 7-8, Pg ID 449).  Finally, in May 2010, Dr. Adams examined plaintiff and opined that "he continues to have significant pain in his back and it is worsened when he leans forward," and that "at this point he is in no shape to be able to work or have a job," and "I am not certain that he is ever going to be able to return to a lifting, twisting, turning, bending job as we have said before."  (Dkt. 7-8, Pg ID 452).  Dr. Adams also filled out a Medical Assessment of Ability to Do Work-Related Activities (Physical) form in which he opined that plaintiff could sit, stand and walk for only 30 minutes during the work day, lift and carry and push and pull up to 10 pounds, never bend, twist, reach above shoulder level, squat, kneel, climb ladders, crouch, crawl or stoop, and only occasionally climb stairs. (Dkt. 7-8, Pg ID 453-55).  The ALJ did not give controlling weight to Dr. Adams' assessment, finding "[t]here was no clinical examination that revealed the claimant's functioning parameters in range of motion, straight-leg raising and testing and no recent physical therapy evaluations to show the claimant's

26

functionality and limitations." (Dkt. 7-2, Pg ID 37). The ALJ also found that Dr. Adams' restrictions were not consistent with plaintiff's daily activities. (*Id.*). The ALJ thus apparently arrived at his RFC based on his own analysis of the medical evidence in the record.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL

3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability at either step four or five of the sequential evaluation may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination.  The only functional limitations in the record are those found in Dr. Adams' records, which the ALJ discredits, finding them inconsistent with the medical evidence.  There is no RFC determination by a consulting physician, and the ALJ notes that "[t]here was no clinical examination that revealed the claimant's functioning parameters in range of motion, straight-leg raising and testing . . . " and no "recent clinical function testing."  (Dkt. 7-2, Pg ID 37).  Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on his own independent medical findings.  Under these circumstances, and given that the matter will be remanded for absence of a medical opinion on equivalence, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion to support the ALJ's residual functional capacity finding.  And, upon remand, the ALJ can consider the additional medical records submitted after the ALJ's decision was rendered.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED** in part, that the findings of the

Commissioner be **REVERSED** in part, and that this matter be **REMANDED** under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

30

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 23, 2013                              s/Michael Hluchaniuk
                                                 Michael Hluchaniuk
                                                 United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on July 23, 2013, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to the following: James R. Rinck, Susan K. DeClercq, AUSA, and
Marc Boxerman, Social Security Administration.

                                                 s/Tammy Hallwood
                                                 Case Manager
                                                 (810) 341-7887
                                                 tammy_hallwood@mied.uscourts.gov

31